[Civ. No. 11337. First Appellate District, Division Two.—May 17, 1940.]

FRED F. DURANT, Respondent, v. CITY OF BEVERLY HILLS (a Municipal Corporation), Appellant.

Richard C. Waltz, City Attorney, C. Richard Maddox, Assistant City Attorney, O'Melveny, Tuller & Myers, Pierce Works and Paul E. Schwab for Appellant.

Ray L. Chesebro, City Attorney (Los Angeles), S. B. Robinson, Chief Assistant City Attorney, Samuel Poorman, Jr., Assistant City Attorney, and Robert E. Moore, Jr., Deputy City Attorney, as *Amici Curiae,* on Behalf of Appellant.

C. F. Culver for Respondent.

William T. Selby, as *Amicus Curiae,* on Behalf of Respondent.

NOURSE, P. J.—Plaintiff sued for declaratory relief in relation to rates charged him by defendant for water served for domestic purposes. Plaintiff had judgment declaring that he was ''entitled to service of water from the defendant at the same rates as fixed for consumers inside the corporate limits of the city of Beverly Hills''. On its appeal from this judgment the city's main ground of attack is that the judgment is against law and unsupported by any evidence entitling plaintiff to relief.

The plaintiff and others located in unincorporated territory near the city of Beverly Hills had been served with water by a private utility until the entire plant was purchased by the city. This system the city continued to operate as a part of its municipal plant serving water to its inhabitants. The theory of the plaintiff is that, when the defendant purchased the private water plant serving customers outside the limits of the city, it was obliged to continue to serve such customers at the same rate of service as charged customers within its limits. The position of appellant is that it may discriminate between these two classes of customers if the rates fixed are not unreasonable and unjust and do not work a fraud or confiscation upon the customer.

The cause went to trial upon the amended complaint which alleged that plaintiff was a resident of an unincorporated section known as West Hollywood, that the city of Beverly Hills owned and operated a municipal water system from which it served the residents of the city and also the residents of the West Hollywood area, that the defendant has discriminated against the plaintiff by charging him more than the rates charged the residents of the city. It should be noted that the complaint does not allege that the rates charged plaintiff were unreasonable, arbitrary, or fraudulent. It does not allege what was later conceded that the rates were fixed by the legally constituted rate-fixing body, though it does allege ''that no warrant for this discrimination has been furnished by any rate supervising body''. It does not allege what is also conceded that the water system supplying the plaintiff and his neighborhood with water was formerly a privately owned utility which was purchased by the city.

On the trial plaintiff testified covering his ownership of the land, the service of water to him by the private system, and the service through the municipally owned system. Through his testimony it appeared that he had been charged by the private utility a rate of twenty-three cents per hundred cubic feet per month; then later was charged twenty cents; that the rate charged by the city of which he complains is seventeen cents per hundred cubic feet per month for the first seventeen hundred cubic feet, then fifteen cents per hundred cubic feet for all over that quantity, whereas customers residing within the city are charged but thirteen cents. The trial court found all the allegations of the amended complaint true, and in addition found the facts relating to the operation and purchase of the private utility above outlined. No other findings were made to support the conclusion that plaintiff was entitled to service of water by the defendant (in an unlimited amount) at the same rate (for an unlimited time) as the rates charged consumers within the city.

■ There are certain legal principles applicable to the controversy which should be stated at this time. ''A grant of power to provide and supply water to a city and its inhabitants, authorizes a city to carry on a system and supply water to persons outside its limits, whenever it becomes necessary or convenient to do so in order to accomplish the main purpose

of supplying water to those within." (*South Pasadena* v. *Pasadena L. & W. Co.,* 152 Cal. 579, 580 [93 Pac. 490].)

When necessary for its purposes a municipality may purchase an entire water plant or system so that "after operating the system and supplying the persons entitled to use the water, it could devote the surplus to the use of the inhabitants of the city". (*Fellows* v. *Los Angeles,* 151 Cal. 52, 64 [90 Pac. 137] ; *South Pasadena* v. *Pasadena L. & W. Co., supra,* 590.) In these operations the municipality is not selling surplus or excess waters to the prior users. The purchase of the system is impressed with a trust and the city, "with respect to this part of the water, will hold title as a mere trustee, bound to apply it to the use of those beneficially interested". (Id., p. 594.) The continued supplying of water to the outside territory, being incidental to the main purpose, is a municipal affair. (Id., p. 594.)

At this point arises the essential question of the power of the municipality to fix the rates to be charged all consumers within and beyond its boundaries for services rendered under these circumstances. The parties agree that the rates charged were in fact fixed by the city council, and it is not seriously contended that any other specific body should have exercised the power. It should be noted that the complaint merely alleges that "no *warrant* for this discrimination has been furnished by any rate *supervising* body". If the pleader means "permission", "authority" or "sanction" this is a plain conclusion of law, and an erroneous conclusion at that.

The power of the city to fix rates to be charged those customers residing within its boundaries is incidental to the power to "establish and operate" public utility systems conferred by section 19 of article XI of the Constitution. This power to fix the charges for service by the municipality when operating a municipally owned public utility is not controlled by section 23 of article XII of the Constitution. (*City of Pasadena* v. *Railroad Com.,* 183 Cal. 526, 534 [192 Pac. 25, 10 A. L. R. 1425] ; *Jochimsen* v. *Los Angeles,* 54 Cal. App. 715, 716 [202 Pac. 902].) The power of the city to furnish services to inhabitants outside its boundaries is a part of the constitutional grant found in section 19 of article XI, wherein the city is authorized to establish and operate the utility ; and since the operation of the system in the outside territory is but incidental to the main purpose of service

to the inhabitants of the city, it follows as of course that the municipal authorities enjoy the same right to fix the charges to be paid by those served in the outside territory as it has to fix those charged its own inhabitants. And, upon the ruling of the Pasadena case that these extraterritorial operations are the "municipal affair" of the operating city, it follows that the city council must, at least in the first instance, be held to have the power to fix all rates to be charged for its public utility services to those within and without its boundaries. But, in any event, if some superior rate-making body should acquire the right or power to fix the charges under these circumstances, that fact would not be controlling here because the parties agree that the city authorities fixed the rates complained of, and no contention is made that any other body acted or had the power to act in an attempt to fix another rate.

In the last analysis respondent's argument is founded upon this theory—that, having shown that the rates were not uniform, he proved that they were discriminatory and hence illegal, and that, if appellant had any excuse for this discrimination, the burden was on appellant to prove it. Fundamentally the respondent's case rests upon the erroneous theory that he has a *right* to receive the service at the same charge as that made to residents within the city. When the city purchased the private plant it assumed a trust to perform the contract and meet the obligations of the private concern. The obligation of that company to its customers did not require water service at the same rate paid by citizens of Beverly Hills. The obligation which the city assumed through the purchase of the system was an obligation to continue to serve plaintiff water at a *reasonable* rate. Lack of uniformity in the rate charged is not necessarily unlawful discrimination, and is not *prima facie* unreasonable. Discrimination to be objectionable must draw an unfair line or strike an unfair balance between those in like circumstances having equal rights and privileges. "The fundamental theory of rate making for public utilities is that there shall be but one rate for a particular service, and a charge made to one patron or consumer different from that made to another, for the same service under like circumstances, constitutes undue discrimination and renders the charge improper. The fact, however, that a rate is discriminatory by comparison with another rate does not necessarily estab-

lish or imply that either of them is unreasonable in the sense of being inadequate or exorbitant. . . . It is only unjust or unreasonable discrimination which renders a rate or charge unreasonable; and a utility may, without being guilty of unlawful discrimination, classify its customers or patrons upon any reasonable basis, as according to the purpose for which they receive the utility's service . or product, or the quantity or amount received, and, subject to the general requirements of reasonableness, make separate rates for each class or group, even though there be but one customer included therein.'' (51 C. J. 29, 30.)

 Reverting to the question of the burden of proof, we assume that when a party comes into a court of equity he will come prepared to prove his equities and not rest on the failure of his adversary to disprove them. The rates here complained of, having been fixed by the lawful rate-fixing body, must be presumed to be reasonable, fair and lawful. The appellant was entitled to rest upon that presumption until the respondent made some showing to the contrary. ''Mere difference in the rates charged various classes of users is not sufficient to establish an unjustifiable discrimination.'' (*Kiefer* v. *Idaho Falls,* 49 Idaho, 458 [289 Pac. 81, 83].) There are many reasons of which the court might take judicial notice and which would justify a difference in rates of service to consumers differently situated. These reasons would support the presumption that the action of the city council in fixing the rates was reasonable and fair. But, in the absence of any showing of any character that the charges were unreasonable, unfair or fraudulently or arbitrarily established, the trial court had no case for any relief to respondent. In short, the respondent has sought to substitute the court for the city council and have the court fix the charges which he should pay. ' The universal rule is that in these circumstances the court is not a rate-fixing body, that the matter of fixing water rates is not judicial, but is legislative in character, and that the limit of its function and jurisdiction is to find, upon a proper showing, that the rates fixed are unreasonable and unfair. (*Spring Valley Water Works* v. *Bartlett,* 63 Cal. 245; *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1, 8 [29 Sup. Ct. 148, 53 L. Ed. 371].) If upon such finding it is adjudged that the established rates shall not be collected, the court is not permitted to fix an-

other and different rate, but this function must be left with the proper rate-fixing body.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 15, 1940.