TRIANGLE OIL, INC., a corporation,
Plaintiff and Appellant,

v.

NORTH SALT LAKE CORPORATION et
al., Defendants and Respondents.

No. 16269.

Supreme Court of Utah.

March 27, 1980.

George K. Fadel, Bountiful, for plaintiff and appellant.

Michael T. McCoy, Salt Lake City, for defendants and respondents.

CROCKETT, Chief Justice:

Plaintiff, Triangle Oil, Inc., sought to mandamus the North Salt Lake city council to issue a Class A beer license to its multi-purpose gas station and grocery store.[1] From the district court's rejection of its petition, plaintiff appeals.

Plaintiff contends that the action of the city was in excess of any authority granted it by statute; that since beer can be purchased from other licensees in the city, the denial of plaintiff a license does not come within the police power to safeguard the health, safety and morals; and that its action is arbitrary and discriminatory.

In explanation of the city council's refusal to grant plaintiff's application, the mayor sent plaintiff a letter on September 6, 1978. The pertinent part stated:

Due to the size of North Salt Lake and to the fact that there are now seven active beer licenses in the city, the council voted unanimously to disapprove your request. Their action in no way reflects upon you or your business. It merely reflects the council's feelings that there are now sufficient beer outlets within the city.

The statute whence the city derives its authority is Sec. 32–4–17, U.C.A. 1953, which provides that:

Cities and towns within their corporate limits . . . shall have power to license, tax, *regulate or prohibit* the sale of light beer, at retail, in bottles or draft . . . .

Acting pursuant to that statute, the city has by ordinance provided for granting licenses for the sale of beer. The section of its ordinance dealing with the number of licenses to be issued states:

The total number of businesses licensed to sell beer in the city of North Salt Lake

---

1. A license to sell beer in original containers for consumption off the premises.

*shall not exceed four,* provided that this ordinance shall not operate to reduce the number of businesses now licensed to sell beer whether issued by this municipality or by the county if such business is annexed nor shall it affect reapplications for such licenses.[2]

█ Plaintiff urges that there should be strict construction of the grant of authority to the city; and that inasmuch as the statute does not expressly grant authority to restrict the number of licenses to be issued, the city is without power to do so. We agree with the proposition that cities are political subdivisions of the state created by statute and that the only powers they have must be found in the statutes which create them.[3] However, that statement is subject to the elaboration that they have the powers expressly set forth and those necessarily implied therefrom which are essential to carrying out the duties and purposes of the city government.[4]

█ In this, as in most controversies, there are two sides to the coin, neither wholly irrational. On the one hand, we observe with some seriousness, that it is difficult to see how licensing one more outlet for the sale of beer in containers, not to be consumed on the premises, could have any substantial effect upon the health, morals or safety of the community. On the other hand, in Sec. 32–4–17 quoted above, the legislature has expressly given the city a broad grant of authority to "regulate or prohibit" the sale of beer. The axiom of logic is that the whole includes all of its parts. Therefore, if a city can regulate or prohibit the sale entirely, certainly it can impose any reasonable regulations thereon. In relation to the problem dealt with herein, it is generally recognized that because beer is a beverage containing alcohol its sale is sufficiently related to the public health, morals and safety that it is subject to regulation under the police power;[5] and this extends to limitation on the number of retail outlets.[6]

It appears that there are presently seven such licenses in a relatively small community.[7] If each new applicant could successfully insist that just one more would not make any substantial difference, that would effectively prevent the city from regulating the number of licenses at all, and the matter could get beyond control entirely.

Plaintiff makes the alternative argument that if the city limits the number of beer licenses they should be rotated among qualified applicants with no preference given those seeking renewals. In response thereto, the city counters that it is essential to the stability and continuance of existing businesses that they be given preference over new applicants. Consistent with that position, we have heretofore had occasion to say that:

.   .   . because beer licenses are available on a quota system *it seems especially reasonable and proper that a business which has had a license and has been in operation should have some preference over any new application* ; and that the operating business should have its license renewed unless there is some reasonable basis for denying it.[8] [All emphasis herein is added.]

Whatever else may be said about this point, the proposal as to the adoption of a rotating system of licensing is a problem for city management.

█ We are sensitive of the responsibility of courts to be receptive to the consideration of alleged grievances and oppressions, or the denial of rights.[9] Nevertheless, be-

---

2. The city indicates that there are three holdover licenses in existence.

3. *Johnson v. Sandy City Corp.,* 28 Utah 2d 22, 497 P.2d 644 (1972).

4. *Salt Lake City v. Revene,* 101 Utah 504, 124 P.2d 537 (1942); *Ritholz v. City of Salt Lake,* 3 Utah 2d 385, 284 P.2d 702 (1955).

5. *Winther v. Village of Weippe,* 91 Idaho 798, 430 P.2d 689 (1967).

6. *Winther v. Village of Weippe,* supra, note 5; 45 Am.Jur.2d, Intoxicating Liquors, Sec. 135.

7. Current population is about 5,000.

8. *Anderson v. Utah County Bd. of County Commissioners,* Utah, 589 P.2d 1214, 1216 (1979).

9. Article I, Sec. 11, Utah Constitution.

cause of the seriousness of judicial responsibility in having the final word in its interrelationship with other departments and institutions of government, it has been found to be wise and proper judicial policy to exercise its powers with restraint, and not to intrude into or interfere with the discretionary functions or the policies of other departments of government. Accordingly, the courts generally will not so interfere with the actions of a city council unless its action is outside of its authority or is so wholly discordant to reason and justice that its action must be deemed capricious and arbitrary and thus in violation of the complainant's rights.[10]

In harmony with those principles, it is our conclusion that the trial court properly refused to grant the petition to mandamus the defendant city council.

Affirmed. No costs awarded.

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

---

10. *Mantua Town v. Carr*, Utah, 584 P.2d at 912 (1978).