No. 51,281

WALTER E. DEDEKE and IVA JUNE DEDEKE, *Plaintiffs-Appellees,* v. RURAL WATER DISTRICT NO. 5, LEAVENWORTH COUNTY, KANSAS, and EDWARD BOTT, *Defendants-Appellants.*

(623 P.2d 1324)

Opinion filed February 28, 1981.

*Edward J. Chapman, Jr.,* Chartered, of Leavenworth, argued the cause and was on the briefs for the appellant Water District.

*Thomas J. Brown, Jr.,* of Leavenworth, argued the cause and was on the brief for the appellant Edward Bott.

*John C. Tillotson,* of Murray & Tillotson, Chartered, of Leavenworth, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is a dispute between a farm couple and a rural water district which arose when employees of the water district cut off the plaintiffs' water service. The plaintiffs, Walter E. Dedeke and his wife, Iva June Dedeke, are owners of farmland in Leavenworth County and participating members of the water district. The defendants are Rural Water District No. 5, Leavenworth County, and the chairman of its board of directors, Edward Bott. The water supplying plaintiffs' farm was cut off at the meter, when the defendants concluded the plaintiffs had violated the water district's bylaws and regulations by serving more than one

residence through a single water meter. The plaintiffs brought an action for a permanent injunction and for damages allegedly caused by the interruption of the water service to plaintiffs' farm. After a full hearing, the district court granted plaintiffs a permanent injunction, enjoining the defendants from again disconnecting plaintiffs' water service. It reserved the question of damages for a later trial. The defendants appealed from the order granting the permanent injunction.

At the time of entering judgment in favor of the plaintiffs, the district court made findings of fact and conclusions of law which are in part as follows:

### "FINDINGS OF FACT

"1. Plaintiffs reside within the boundaries of defendant Rural Water District No. 5.

"2. Defendant Rural Water District No. 5 is a municipal corporation organized under the laws of Kansas, K.S.A. 82a-612 et seq., and defendant Edward Bott was one of the organizers of the defendant District and at all times pertinent hereto was the Chairman of the Board of Directors.

"3. In 1966 plaintiffs purchased a forty acre tract in Leavenworth County and resided in a residence (house number 1) located thereon. From 1966 to 1968 plaintiffs' water source was a well located near this house. On February 12, 1968, plaintiffs purchased Benefit Unit Certificate No. 109 from defendant District and began receiving water through a meter located on their property.

"4. On or about July 1, 1969, plaintiffs purchased an additional forty acres adjacent to their other property and on which another residence (house number 2) was located. Benefit Unit Certificate No. 70, which had been issued by defendant District to the previous owners of this property, was transferred to plaintiffs at the time of purchase.

"5. Plaintiffs moved to house number 2 and resided therein until a new residence (house number 3) was completed on their first forty-acre tract. Plaintiffs obtained water through Certificate No. 70 while they resided in house number 2. Also during this period of time Larry Dedeke resided in house number 1 and obtained water through Certificate No. 109.

"6. In March, 1971, plaintiffs applied for the issuance of a third benefit unit certificate for their anticipated new residence. On August 6, 1971, plaintiffs' application was denied by defendant District. Shortly thereafter plaintiffs occupied house number 3, and they extended the water service under Certificate No. 109 from the meter near house number 1 to house number 3. During this period of time Larry Dedeke vacated house number 1 which then remained vacant until approximately February, 1975.

"7. After extending their water service to their new residence, plaintiffs disconnected the water line running from the meter to house number 1. However, the water lines running from the meter to the various hydrants and outbuildings located near house number 1 remained in service.

"8. In May, 1974, defendant Bott and another representative of defendant District first observed house number 3 and suspected that two residences were

being supplied with water from one meter. These suspicions were reported to defendant's Board at a regular meeting on May 16, 1974. A letter dated May 19, 1974, was written by defendant District's secretary-treasurer to plaintiffs stating that plaintiffs had illegally connected water to a second residence; that an additional benefit unit certificate would be issued for a charge of $698.00 plus installation; and that failure to comply with the stated conditions by June 1, 1974, would result in the discontinuance of water service to plaintiffs' existing units.

"9.   On June 1, 1974, plaintiffs' water service was first terminated by the use of a shut-off valve. Shortly thereafter representatives of the plaintiffs and defendant District conferred and reached an agreement for the resumption of water service. On July 23, 1974, representatives of defendant District inspected the premises of house number 1 and reported to the Board at its regular meeting on September 19, 1974, that only two houses appeared to be connected to the two meters serving plaintiffs' property.

"10.   In February, 1975, tenants occupied house number 1 and obtained water for the house from the well located nearby and previously utilized by plaintiffs. On several occasions when the well became low, plaintiffs hosed water into it from the water line servicing house number 3.

"11.   On May 15, 1975, defendant Bott and Harry Reeder, a member of the Board of defendant District, reported that, in checking out a report plaintiffs were using water in three houses on two memberships, they had found occupants in house number 1 and house number three. At this meeting the Board apparently authorized a further investigation and the discontinuance of water service to plaintiffs if three houses were being served from two meters.

"12.   On June 3, 1975, defendant Bott and Harry Reeder returned to plaintiffs' premises. At this time Reeder turned on a faucet on the east side of house number one and observed no flow of water. Then he turned on a faucet which protruded from the foundation on the west side of this house and observed a flow of water which registered on the meter serving house number 3. Thereupon Reeder informed plaintiff Iva June Dedeke that he believed plaintiffs had two houses hooked to one meter. After Mrs. Dedeke informed him that house number one was hooked to a well, Reeder requested her to have her husband contact defendant District to explain the matter. After leaving house number 3, Reeder and defendant Bott proceeded directly to the shut-off valve where they terminated the flow of water to both meters serving plaintiffs' property.

"13.   On June 16, 1975, defendant Bott and Reeder checked the shut-off valve and discovered that it had been opened one turn. On June 19, 1975, they made another check and discovered that again the shut-off valve had been opened partially. Thereupon they closed and locked a valve on the meter located near house number one. On June 23, 1975, they removed the water meter and capped off the water line servicing plaintiffs' property under Certificate No. 109.

"14.   Plaintiffs never requested a meeting with defendant District's Board and defendant District never notified plaintiffs of any hearing before plaintiffs filed the above-captioned action on August 15, 1975, and obtained a temporary injunction on September 25, 1975, restoring water service to their property.

"15.   No evidence has been presented to establish that the interior of house number 1 was connected to the water line serving plaintiffs' property under Certificate No. 109 after plaintiffs moved into house number 3."

## "CONCLUSIONS OF LAW

"1. The 'due process' clauses of the Kansas and United States constitutions place procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of these clauses.

"2. The deprival of water service is a deprivation of an interest which enjoys the stature of 'property' within the meaning of the 'due process' clauses of the Kansas and United States Constitutions.

"3. Procedural due process requires that a water district notify a customer of the availability of an avenue of redress within the organization should he wish to contest a charge of violating the district's rules and regulations. Some kind of hearing is required at some time before a customer is finally deprived of water service.

"4. The notification procedure employed by defendant District, while adequate to apprise plaintiffs of the threat of termination of service, was not 'reasonably calculated' to inform them the availability of a procedure for protesting a proposed termination of their water service as unjustified. The purpose of notice under the 'due process' clauses is to apprise the affected individuals of, and permit adequate preparation for, an impending hearing to determine whether the termination of their water service is justified.

"5. The admission of plaintiffs that they furnished water on occasion to their tenants in house number 1 prior to June 3, 1975, did not constitute a substantial violation of the rules and regulations of defendant District.

"6. Defendants have failed to establish that more than one residence was served by the water meter represented by Benefit Unit Certificate No. 109.

"7. Plaintiffs are entitled to a permanent injunction directing defendants to furnish water service to plaintiffs through Benefit Unit Certificate No. 109 in accordance with the rules and regulations of defendant District."

The defendants challenge the trial court's findings of fact No. 7 and No. 15 as not supported by the evidence in the case. We find this contention to be without merit. The evidence presented at the hearing clearly established the following facts to be true:

(1) There was no direct pipe connection between the water meter and the interior of house No. 1.

(2) There was a direct pipe connection between the water meter and a "freeze proof" faucet on the west side of house No. 1 which entered inside the foundation of house No. 1 and immediately projected to the outside of the house. This faucet was used to provide water for agricultural purposes, not to provide service to the residents of house No. 1.

(3) House No. 1 was provided water from a well located in the area. The well was filled from three sources: ground water, water hauled in during dry periods, and water hosed through the meter into the well on a few occasions on weekends, when it was not possible to purchase and truck water in from the outside. The

evidence did not show a substantial quantity of water was used for this purpose.

(4) The water district employees cut off the plaintiffs' water service without notice and an opportunity to be heard. It is obvious from the record that the employees of the water district were confused by the presence of the "freeze proof" faucet on the west side of house No. 1. When they turned on this faucet, they observed water running through the meter and immediately concluded that the interior of house No. 1 was being provided with water service through the meter. This faucet had previously been investigated by employees of the water district a year earlier in 1974 and the true facts were discovered. There is no explanation why this information was not retained by employees of the water district, when the premises were again inspected in 1975. The employees of the water district then proceeded to house No. 3 where a faucet in the house was turned on and water observed running through the water meter. The evidence was undisputed that, at the time defendants' employees were in house No. 3, the Dedeke home, Mrs. Dedeke advised them that house No. 1 was being provided water service from a well. Disregarding this information, the employees went directly to the water meter and cut off the water service. We find evidence to support the findings of fact made by the trial court.

The defendants also challenge conclusions of law Nos. 5 and 6. They maintain that the deposition testimony of the plaintiffs that on infrequent occasions water would be provided house No. 1 by the hosing of water from house No. 3 into the well constituted a substantial violation of the rules and regulations of the water district as a matter of law. The district court considered this contention and obviously found the hosing of water to be so infrequent and inconsequential in quantity as not to constitute a substantial violation of the rules and regulations of the water district. We cannot say that the trial court was in error in its legal conclusions, after considering the evidentiary record in this case.

The primary issue raised by the defendants on this appeal is that the trial court erred in holding that the water district's procedure to terminate plaintiffs' water service failed to comply with the due process clause of the Fourteenth Amendment to the United States Constitution. The defendants concede that water service and other public utility services are considered to be

"entitlements" or property rights protected by the due process clause of the Fourteenth Amendment. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 56 L.Ed.2d 30, 98 S.Ct. 1554 (1978); *Stanford v. Gas Service Company,* 346 F. Supp. 717, 721 (D. Kan. 1972) (life sustaining services fall within protected "rights and entitlements"), cited with approval in *Leek v. Theis,* 217 Kan. 784, 811, 539 P.2d 304 (1975); *Donnelly v. City of Eureka, Kansas,* 399 F. Supp. 64 (D. Kan. 1975) (municipal water service is a constitutionally protected entitlement); *Davis v. Weir,* 328 F. Supp. 317 (N.D. Ga. 1971) (termination of water service requires due process notice and hearing before termination); *Koger v. Guarino,* 412 F. Supp. 1375 (E.D. Pa. 1976) (water user has a legitimate claim of entitlement to continued water service); contra, *Sterling v. Village of Maywood,* 579 F.2d 1350 (7th Cir. 1978).

In *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, plaintiffs' gas and electric services were terminated for nonpayment, despite plaintiffs' attempts to contest the amount of their bills. Notice of impending termination was included in the bill, which stated that nonpayment within a certain time frame would result in termination of services. The termination procedure was held to be procedurally defective because, while it afforded plaintiffs notice before termination, it failed to apprise them of an available opportunity to present their objections to their bills, nonpayment of which was the ground for termination. In *Memphis,* the United States Supreme Court held that some kind of hearing is required at some time *before* a person is finally deprived of his property interest. Noting that the type of hearing required depended on a balancing of competing interests, the court held nonetheless that:

"[S]ome administrative procedure for entertaining customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholding of essential services. The customer's interest is self-evident. Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety." p. 18.

The necessity of a due process hearing in advance of a property deprivation was also discussed in *Fuentes v. Shevin,* 407 U.S. 67, 32 L.Ed.2d 556, 92 S.Ct. 1983 (1972). In *Fuentes,* the purpose of the due process hearing requirement was held to be:

"not only to ensure abstract fair play to the individual. Its purpose, more

particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property." pp. 80-81.

The Kansas Supreme Court has also stressed the necessity of a due process hearing before deprivation of property rights. In *Wertz v. Southern Cloud Unified School District,* 218 Kan. 25, 542 P.2d 339 (1975), this court agreed that a due process hearing must *precede* the termination of the property right to assure termination for just cause, and that hearing *after* termination did not fulfill due process requirements. In explanation, the court cited with approval *Wagner v. Little Rock School District,* 373 F. Supp. 876, 882 (E.D. Ark. 1973):

" '[T]he Constitution requires that governmental decisions, subject to the requirement of procedural due process, be rendered only *after* those procedural requirements have been satisfied. The very purpose of procedural protection is the tempering of the decision process to help insure fairness, and fairness demands that competing interests be represented before the decision-maker on as equal a footing as circumstance permits. The individual who is the object of the proposed governmental action should not have to bear the handicap of overcoming the inertia of the status quo; he should not bear the burden of persuading the decision-maker to reverse a fait accompli unless the proponent of the action can show specific, valid, and appropriate reasons for precipitous, pre-hearing action.' " p. 32.

In the present case, Mrs. Dedeke was informed of the claimed violation by the district's employees. Her immediate denial of any violation and her explanation that house No. 1 was obtaining water from a well rather than through the water district's meter were rejected forthwith and the water service cut off. The only available "hearing" provided was the suggestion that Mr. Dedeke contact the board to "explain." Defendants admit that the water service was shut off in advance of any opportunity for Mr. Dedeke to explain or defend against the charge the plaintiffs had violated the water district's rules and regulations. As stated in *Memphis,* even a temporary termination of water service can be devastating to the customer, and a balancing of interests requires compliance with due process notice and hearing *before* the service is terminated.

It should also be noted, that under the notice requirements set forth in *Memphis,* the notice given to the Dedekes must be considered insufficient. In *Memphis,* it was held that notice of the forthcoming termination must apprise the plaintiff of an available

opportunity to present objections. Mr. Reeder's statement to Mrs. Dedeke that they were violating one of the district's rules did not apprise her of either the contemplated termination or of any opportunity to contest the grounds for termination. Nor did the 1974 letter to the Dedekes supply the necessary notice. That letter stated only that using one meter to service two residences violated the district's rules and was grounds for immediate termination if they did not pay the purchase price of an additional meter. More importantly, the 1974 controversy had ceased upon the board's inspection of house No. 1 and its satisfaction that house No. 1 was not receiving district water.

To summarize, the central meaning of procedural due process is clear—" 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." ' " *Fuentes v. Shevin,* 407 U.S. at 80. Under Kansas law, a rural water district is a creature of statute (K.S.A. 82a-612 *et seq.*). It is incorporated as a quasi-municipal corporation by declaration of the board of the commissioners of the county in which the water district is located (K.S.A. 82a-616). The powers of a rural water district are pre-scribed by statute (K.S.A. 1980 Supp. 82a-619). It has been granted the power of eminent domain. In law and in fact, a rural water district exercises the powers of a public utility. It is subject to state regulation and control. The owner of a benefit unit certificate issued by a rural water district is the owner of a property interest protected by the requirements of due process. Water service is essential and it cannot be terminated by a rural water district without adequate notice and an opportunity to contest the grounds for termination relied upon by the district board.

We recognize that due process, in its essence, is fundamental fairness and that the scope and form of the required hearing may vary according to the nature and importance of the interests and proceedings involved. See *Bradford v. Edelstein,* 467 F. Supp. 1361 (S.D. Tex. 1979). As this court stated in *Wertz v. Southern Cloud Unified School District,* 218 Kan. at 31, constitutional due process is a malleable concept. Its requirements may vary ac-cording to the factual circumstances presented in a particular case.

In the case now before us, the water service of the plaintiffs was terminated by the defendants without notice, following the inspection of their premises by the water district's employees. Plaintiffs were not afforded any opportunity to be heard by the board of the water district before their water service was terminated. The hearing provided was not only inadequate, it was nonexistent. A reading of the record in this case leads one to the conclusion that there was mutual antagonism between certain board members and the plaintiffs. Perhaps, if the board had given the plaintiffs notice and an opportunity for a hearing to explain their circumstances, this litigation could have been avoided. We have no hesitancy in concluding that the district court was correct in holding that the plaintiffs' right to water service was terminated in a manner which violated their due process rights.

The judgment of the district court is affirmed.

McFARLAND, J., dissenting: I have no quarrel with the holdings of the various cases cited in the majority opinion. I do not believe, however, that those cases are applicable herein. We are not dealing with a vast public utility whose operation is out of the control of the customers. Defendant is a rural water district organized pursuant to K.S.A. 82a-612 *et seq.* The operation of a rural water district is a cooperative venture. The participating members elect the officers. K.S.A. 82a-618. Plaintiffs are participating members of defendant rural water district.

Due process of law has repeatedly been held not to be fixed. It has often been characterized as the equivalent of fairness under the particular circumstances. The participating members (plaintiffs) were in apparent violation of their agreement with the water district. The plaintiffs repeatedly conferred with the Chairman of the Board of defendant water district on the plaintiffs' property. Unlike the typical public utility case, plaintiffs herein were conferring with decision-making officers as opposed to lower echelon employees. At anytime plaintiffs could have cleared up the controversy by showing what plumbing arrangements they had set up. Plaintiffs were fully apprised of what the conditions were for receiving water. They admitted using district water in their well without prior permission—a clear-cut violation of a condition for receiving water. They also knew violation of the

terms would result in loss of the right to district water. Even after the water service was shut off, the plaintiffs turned it back on repeatedly—even breaking a lock to do so.

Under the totality of the circumstances herein, due process was had. I would reverse the trial court.

HERD, J., joins the foregoing dissenting opinion.