CHOCOLAY CHARTER TOWNSHIP v CITY OF MARQUETTE

Docket No. 73866. Submitted February 9, 1984, at Grand Rapids.—
Decided October 2, 1984. Leave to appeal applied for.

Chocolay Charter Township, among others, filed suit against the
City of Marquette and the Board of Light and Power of the City
of Marquette in Marquette Circuit Court alleging, *inter alia,*
that a rural power rate increase to take effect April 10, 1981,
was arbitrary, capricious and unreasonable and would result in
rural power customers subsidizing urban customers. Plaintiffs
argued that the rates proposed were unnecessarily increased by
the action of the City of Marquette in including in its cost of
services payments in lieu of taxes which the Board of Light and
Power was required to pay to the city. Defendants responded by
arguing that the payments in lieu of taxes merely represented
reasonable profits to the City of Marquette from the operation
of its electric utility. The trial court, Clair J. Hoehn, J., found
that the payment in lieu of taxes rendered the rates unreason-
able. The City of Marquette appealed. On December 8, 1982,
the Court of Appeals issued an order affirming the trial court's
decision. The City of Marquette sought leave to appeal to the
Supreme Court, which, in lieu of granting leave to appeal,
vacated the Court of Appeals order affirming the decision of the
trial court and remanded the case to the Court of Appeals for
plenary consideration, 417 Mich 1100.4. Following plenary
consideration, *held:*

1. A reviewing court may look behind the actual rate charged
by a municipally-owned utility to determine whether the rate is
reasonable.

2. The method used to compute the utility rates renders the
rates arbitrary and unreasonable. The city collects "taxes" for
services which it does not render and which are rendered by

REFERENCES FOR POINTS IN HEADNOTES

[1] 64 Am Jur 2d, Public Utilities § 9.

[1-6] 64 Am Jur 2d, Public Utilities §§ 80, 128, 137.

[4, 6] 64 Am Jur 2d, Public Utilities § 120.

Discrimination between property within and that outside munici-
pality or other governmental district as to public service or
utility rates. 4 ALR2d 595.

other entities, which forces rural rate-payers to pay twice for the township and county services rendered by those governmental units to the utility, thereby subsidizing urban rate-payers.

Affirmed.

1. MUNICIPAL CORPORATIONS — PUBLIC UTILITIES — MUNICIPALLY-OWNED UTILITIES — RATES — COURTS.

Municipally-owned utilities are exempt from regulation by the Public Service Commission, but rates fixed for service rendered by such utilities are reviewable by the courts and, while courts will not normally interfere with discretionary acts of municipal officials, the courts will demand that rates fixed by municipal entities be reasonable and equitable (MCL 460.6; MSA 22.13[6]).

2. MUNICIPAL CORPORATIONS — PUBLIC UTILITIES — MUNICIPALLY-OWNED UTILITIES — RATES — COURTS.

A reviewing court may look behind the actual rate charged by a municipally-owned utility to determine whether the rate charged is reasonable.

3. MUNICIPAL CORPORATIONS — PUBLIC UTILITIES — MUNICIPALLY-OWNED UTILITIES — RATES — PROFITS.

A municipality is not required to furnish utility services at cost, but may charge a rate which will yield a profit.

4. MUNICIPAL CORPORATIONS — PUBLIC UTILITIES — MUNICIPALLY-OWNED UTILITIES — RATES.

There is no inherent inequity in a municipality's charging greater rates for its utility services to outlying customers than to customers within the municipality itself.

5. MUNICIPAL CORPORATIONS — PUBLIC UTILITIES — MUNICIPALLY-OWNED UTILITIES — RATES.

A city, in setting rates for a municipally-owned utility, may take into consideration the fact that the property of the utility is not taxed and that other services furnished by the city, such as fire and police protection, are furnished without charge; further, payments in lieu of taxes made by a municipally-owned utility may be a reasonable expenditure when calculated to pay for the cost of municipal services provided to the utility.

6. MUNICIPAL CORPORATIONS — PUBLIC UTILITIES — MUNICIPALLY-OWNED UTILITIES — RATES.

A city's method of computing rates for a municipally-owned utility rendered the rates arbitrary and unreasonable where the method used forced rural rate-payers to pay twice for

township and county services rendered to the utility, thereby subsidizing urban rate-payers.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Albert Ernst),* for plaintiffs.

*Willard L. Martin,* for defendant.

Before: M. J. KELLY, P.J., and R. M. MAHER and M. P. REILLY,* JJ.

PER CURIAM. On December 8, 1982, this Court issued an order affirming the trial court's order wherein it held, *inter alia,* that utility rates charged by defendant Board of Light and Power of the City of Marquette to plaintiffs were arbitrary, capricious and discriminatory. Defendant City of Marquette sought leave to appeal to the Supreme Court. On September 15, 1983, the Supreme Court, in lieu of granting leave to appeal, vacated this Court's order and remanded the case to this Court for plenary consideration.

Plaintiffs brought this action in the trial court in their capacities as customers of defendant board and on behalf of their residents who were also customers of the board. Among the allegations made by plaintiffs was the claim that a rural power rate increase to take effect April 10, 1981, was arbitrary, capricious and unreasonable. This claim was premised on the theory that the method of computing the rate, mandated by the City Charter, resulted in rural power customers subsidizing urban customers:

"That the rates proposed to be put into effect are unnecessarily increased by the arbitrary and capricious action by the City of Marquette in including in its cost of service so-called 'payments in lieu of taxes' under

* Circuit judge, sitting on the Court of Appeals by assignment.

which the Board of Light and Power is required to pay
to the City of Marquette annually, and does pay to the
City of Marquette annually, at a present rate in excess
of $600,000.00 per year, a sum of money determined to
be 'the equivalent of all property taxes levied by any
unit of government on property within the City of
Marquette,' based not only upon a valuation of all
property of the utility located inside the City of Mar-
quette, but also including the valuation of all property
of such utility located outside the city, with the tax
equivalent 'computed by multiplying the tax rates for
the city, schools, and county government by the total
valuation as so fixed.' All payments of the tax equiva-
lents are 'for the use of the general city government
only and not for the schools, library or Marquette
County.' This requirement has the result that the elec-
trical customers of defendants, being plaintiffs and
inhabitants of plaintiff townships, and other townships,
are paying a rate sufficient to pay not only all expenses
of operation associated with their own usage, but also a
subsidy subsidizing part of the cost of furnishing ser-
vices to the city's own residents, contrary to law."[1]

Defendants responded to this charge by arguing
that the payments in lieu of taxes, as calculated
under the City Charter, merely represented rea-
sonable profits to the city from the operation of its
electric utility. They agreed that the payments in
lieu of taxes exceed the taxes which the board
would be required to pay were it not exempt from
property taxes, but claimed that this was not a
relevant consideration because the overall rate
charged to customers is reasonable. The city also
argued that, by treating the payment in lieu of
taxes as an expense of the utility, it had imposed
the payment equally upon both resident and non-
resident customers.

The trial court found that the payment in lieu of
taxes rendered the rates unreasonable. The court

---

[1] Plaintiffs' complaint, quoting from the City of Marquette's charter.

approved the city's use of the payment in lieu of taxes to the extent that the payment was based upon taxes which would have been levied upon the board's property located within the City of Marquette and which would have reimbursed the city for services actually rendered. (For example, the city would otherwise have had to provide free police and fire protection to the tax-exempt board properties physically located within the City of Marquette.) However, the court rejected the portions of the payment in lieu of taxes which were based on taxes the board would otherwise have been required to pay *other* government entities. These taxes included property taxes which, had the board not been tax exempt, the board would have owed the rural townships in which board property was located. These taxes also represented taxes which the board would have owed, were it not tax-exempt, for school and county purposes. The trial court found that these portions of the payment in lieu of taxes mechanism mandated by the city forced rural rate-payers to subsidize the urban rate-payers.

On appeal, the city first argues that the trial court impermissibly considered the city's method of computing the utility rates in finding that the rates were arbitrary and unreasonable and so failed to adequately defer to the legislative rate-making prerogative of the city. After reviewing the pertinent authority, we disagree.

Municipally-owned utilities are exempt from regulation by the Public Service Commission, MCL 460.6; MSA 22.13(6), but rates fixed for service rendered by such utilities are reviewable by the courts. 64 Am Jur 2d, Public Utilities, § 128, pp 654-655. While courts will not normally interfere with discretionary acts of municipal officials, *Wolgamood v Village of Constantine,* 302 Mich 384,

395; 4 NW2d 697 (1942), the courts will demand that rates fixed by municipal entities be reasonable and equitable. *Preston v Bd of Water Comm'rs of Detroit,* 117 Mich 589, 597; 76 NW 92 (1898). Contrary to the city's contention on appeal, reviewing courts may, and have, examined the rationale and elements underlying the assessed rates: "Defendant's claim that the rate so established by plaintiff is unreasonable depends in part on the correctness of its prior claims as to what is to be included in the system and the question of the depreciation to be charged." *Detroit v Highland Park,* 326 Mich 78, 99; 39 NW2d 325 (1949). See also *Meridian Twp v East Lansing,* 342 Mich 734, 746-751; 71 NW2d 234 (1955). We therefore reject the city's claim that a reviewing court may not look behind the actual rate charged to determine if it is reasonable.

We also reject the city's argument that the particular mechanism used by the city in this case is proper. A municpality is not required to furnish utility services at cost, but may charge a rate which will yield a profit. OAG, 1975-1976, No 5056, p 624 (September 29, 1976). Similarly, there is no inherent inequity in the city's charging greater rates for its utility services to outlying customers than to customers within the city itself. *Detroit v Highland Park,* supra, 326 Mich 101; *Meridian Twp v East Lansing,* supra, 342 Mich 747. In setting rates, a city may take into consideration the fact that the property of the utility is not taxed and that other services furnished by the city, such as fire and police protections, are furnished without charge. *Detroit v Highland Park, supra.* Further, payments in lieu of taxes made by a municipally-owned utility may be a reasonable expenditure when calculated to pay for the cost of

municipal services provided to the utility. OAG 1975-1976, No 5056, p 624.

However, the particular mechanism used in this case does not calculate the payment in lieu of taxes in a manner consistent with this permissible purpose. Instead, the city collects "taxes" for services it does not render and which, in fact, other entities must render. In effect, this forces rural rate-payers to pay twice for the township and county services rendered by these governmental units to the utility, thereby subsidizing urban rate-payers. We fully agree with the trial court that this method of computing the board's utility rates renders the rates arbitrary and unreasonable.

Affirmed. No costs, a public question being involved.