Leo A. WALKER, Plaintiff
and Appellant,

v.

BRIGHAM CITY, Peter C. Knudson, Beth
W. Currister, David G. Hacking, Dee J.
Hammon, Robert B. Shelton, Mark A.
Walker, Redevelopment Agency No. 1
of Brigham City, Redevelopment Agen-
cy No. 2 of Brigham City, Michael T.
Cosgrove, and John or Jane Does I
through X, Defendants and Appellees.

No. 910240.

Supreme Court of Utah.

June 24, 1993.

Robert R. Wallace, Salt Lake City, for
Walker.

Ben Hadfield, Jeff R. Thorne, Brigham
City, and Jody K. Burnett, Kurt M. Frank-

enburg, Salt Lake City, for the Brigham City parties.

HALL, Chief Justice:

Plaintiff Leo A. Walker appeals the orders of the First Judicial District Court denying his motion for summary judgment and granting defendant Brigham City's motion for summary judgment. We affirm.

Brigham City, a municipal corporation, owns and operates the only electric utility in the city. The governing body of Brigham City, the Brigham City Council (hereinafter referred to collectively as "Brigham City"), sets the rates for service.

Walker, a citizen of Brigham City, receives and pays for electric utility service from the city-owned utility. The fees that Walker and all other customers pay for electric utility service are collected and held in the city's consolidated utility fund.[1] Following notification to utility customers, surplus amounts collected in the consolidated utility fund are transferred to the city's general fund.[2] The surplus funds are commingled with tax revenues and are used for general city obligations.

Brigham City charges rates for electric utility service that have historically resulted in a surplus. Walker commenced this action to enjoin Brigham City from setting rates in excess of the cost of furnishing electric utility service, thereby preventing Brigham City from realizing a surplus. He challenged Brigham City's rate-setting procedure as well as the actual rates. He further claimed that Brigham City's practice of realizing revenues from overcharging for electric utility service amounted to an unconstitutional taking of property without just compensation. Both Walker and Brigham City moved for summary

judgment on the issue of Brigham City's charging electric utility rates that result in a surplus. The district court denied Walker's motion and granted Brigham City's. The court held as a matter of law that although Brigham City was charging rates higher than necessary to cover costs, neither the rate-setting procedure nor the rate levels were unreasonable. Furthermore, the trial court concluded that Walker's claim did not give rise to a constitutional issue.

■ Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3] In determining whether summary judgment was properly granted, we accord no deference to the trial court's legal conclusions but review them for correctness.[4]

Walker maintains that Brigham City intentionally overcharges its customers for electric utility service in anticipation that surpluses will be realized. These surpluses are then diverted to the city's general fund and used for general city obligations. Walker claims that this practice violates Utah Code Ann. § 55–3–10. He relies on the following portion of section 55–3–10, which provides in relevant part, "Rates for services furnished by any project or service as described in Section 55–3–1 [5] hereof shall be reasonable...." Walker challenges Brigham City's rate-setting procedure and the rates charged for electric utility service as being unreasonable and therefore illegal pursuant to section 55–3–10. We treat these as separate claims and address each accordingly.

■ The procedure challenged as unreasonable is that of overcharging customers

---

**1.** In addition to an electric utility, Brigham City owns and operates water and sewage utilities. The consolidated utility fund includes fees received for electricity, water, and sewage services.

**2.** Although the surplus in the consolidated utility fund is generally made up of fees collected from all of the Brigham City-owned utilities, revenues derived from the various utilities are accounted for separately.

**3.** Utah R.Civ.P. 56(c); *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 898 (Utah 1992); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1039 (Utah 1991).

**4.** *Clover*, 808 P.2d at 1040 (citing *Blue Cross & Blue Shield v. State of Utah*, 779 P.2d 634, 636 (Utah 1989)).

**5.** Utah Code Ann. § 55–3–1 authorizes Brigham City to own and operate an electric utility plant.

for electric utility service, realizing a surplus, and then using the surplus funds for general city obligations. Walker contends that Brigham City intentionally overcharges for electric utility service as a method of raising revenues. This, according to Walker, is impermissible because only taxes, not fees for services such as those at issue, may be utilized to generate revenues. Walker cites a number of cases from this and other jurisdictions to support the well-recognized proposition that a service fee that exceeds the reasonable cost of rendering the service results in revenue and is therefore an illegal tax.[6] However, on the more specific issue presented here, Walker cites no cases in support of the proposition that fees for specific nonregulatory services cannot exceed the cost of such services, and indeed, it appears that there are none.

■ Fixing rates for electric power supplied by a municipally owned utility is a legislative act.[7] In reviewing a municipality's exercise of legislative discretion, this court defers to a city council's judgment unless it has acted outside of its authority or its actions are such that they are arbitrary and capricious.[8] Nothing in the record suggests that Brigham City's rate setting was "so wholly discordant to reason and justice" as to be arbitrary and capricious.[9] We therefore hold that the procedure employed by Brigham City in setting electric utility rates is reasonable.

■ We now turn to Walker's claim that the actual rates charged by Brigham City for electric utility service are unreasonable and therefore illegal pursuant to section 55-3-10. It is first to be observed that "[r]ates established by the lawful rate-fixing body are presumed reasonable, fair and lawful."[10] It is therefore incumbent upon Walker to show that the rates charged are in fact unfair or unreasonable.

■ Walker first contends that the rates are unreasonable because Brigham City charges rates in excess of the cost of providing the electric utility service. He claims that rates may be set to produce the necessary revenues to cover *only* those costs of operation specifically enumerated in the statute.[11] He relies on the concluding portion of section 55-3-10, which provides:

Such rates may be fixed and revised ... so as to produce these amounts, and the governing body may covenant and agree in the ordinance or other legislative enactment authorizing the issuance of such

---

**6.** *See Ponderosa One Limited Partnership v. Salt Lake City Suburban Sanitary Dist.*, 738 P.2d 635 (Utah 1987); *Consolidation Coal Co. v. Emery County*, 702 P.2d 121 (Utah 1985); *Mountain States Tel. & Tel. Co. v. Salt Lake County*, 702 P.2d 113 (Utah 1985); *Lafferty v. Payson City*, 642 P.2d 376 (Utah 1982); *Banberry Dev. Corp. v. South Jordan City*, 631 P.2d 899 (Utah 1981); *Williams v. Hawkins*, 372 So.2d 1010 (Fla.1979); *City of Chicago Heights v. Public Serv. Comm'n of N. Ill.*, 408 Ill. 604, 97 N.E.2d 807 (1951); *Parke Towne v. Pennsylvania Pub. Util. Comm'n*, 61 Pa.Cmwlth. 285, 433 A.2d 610 (1981).

**7.** 12 Eugene McQuillin, *The Law of Municipal Corporations* § 35.37, at 607 (3d ed. rev. 1986).

**8.** *Board of Educ. v. Salt Lake County Comm'n*, 749 P.2d 1264, 1265 (Utah 1988); *Triangle Oil, Inc. v. North Salt Lake Corp.*, 609 P.2d 1338, 1340 (Utah 1980); *Mantua Town v. Carr*, 584 P.2d 912, 914 (Utah 1978); *Child v. City of Spanish Fork*, 538 P.2d 184, 186 (Utah 1975).

**9.** *Triangle Oil*, 609 P.2d at 1340.

**10.** *Hansen v. City of San Buenaventura*, 42 Cal.3d 1172, 233 Cal.Rptr. 22, 26, 729 P.2d 186,
190 (1986) (citing *Elliott v. City of Pacific Grove*, 54 Cal.App.3d 53, 126 Cal.Rptr. 371 (1975); *Durant v. City of Beverly Hills*, 39 Cal.App.2d 133, 102 P.2d 759 (1940)).

**11.** Walker points to the following portion of section 55-3-10, which delineates certain costs:

[R]ates shall be sufficient to provide for the payment of the interest upon and principal of all such bonds as and when the same become due and payable, to create a bond and interest sinking fund therefor, to provide for the payment of the expenses of administration and operation and such expenses for the maintenance of the project or service, necessary to preserve the same in good repair and working order, to build up a reserve for depreciation, to build up a reserve for improvements, betterments and extensions other than those necessary to maintain the same in good repair and working order, and to pay the interest on and principal of any other bonds or obligations outstanding and issued in connection with the purchase, construction, repair or improvement of the project or service.

bonds and on the face of each bond at all times to maintain such rates for services furnished by the project or service as shall be sufficient to provide for the foregoing, but not in excess of a reasonable rate for the service rendered.

According to Walker, the statute prohibits charges in excess of the costs of operation. Again, it appears that there is no authority to support Walker's position.

The statute provides that "rates shall be sufficient to provide for the payment" of certain enumerated costs. It does not, however, prohibit rates in excess of those costs. It only prohibits rates from exceeding "a reasonable rate for the service rendered." Thus, it merely reiterates what is stated in the beginning of section 55–3–10, that rates be reasonable. The fact that Brigham City charges more for electric utility service than it costs to provide the service does not by itself render the rates unreasonable pursuant to section 55–3–10.

▇ As a second basis for finding the rates unreasonable, Walker claims that even if Brigham City is entitled to reap a profit from sales of electric service to its customers, the current rate of return is unreasonable, and therefore, the rates charged are implicitly unreasonable. It is true that a municipality which owns and operates its own utility may charge rates that yield a profit.[12] Case law from other jurisdictions also supports Walker's contention that a municipality is entitled to only a

reasonable and fair profit from the rates it charges for utility service.[13] However, the issue presented is not whether Brigham City earns an excessive rate of return or an unreasonable profit. The requirement of section 55–3–10 is not stated in terms of reasonable profit or reasonable rate of return but in terms of a "reasonable rate." We therefore need only determine whether Brigham City charges a reasonable rate for the service rendered.

▇ To determine what is a reasonable rate for electric utility service, we think it appropriate to compare the rates charged by Brigham City with the rates charged by others who provide the same service and are similarly situated. The record provides comparisons[14] of the *average* monthly electric bill of Brigham City, Utah Power and Light ("UP & L"), and other cities that own and operate their own electric utility. These average monthly electric bills were compared at five different levels of monthly kilowatt hours. One comparison indicates that Brigham City's rates are lower than those charged by UP & L.[15] Another comparison shows that Brigham City's rates are lower than the average of the rates charged by all other municipalities that own and operate their own electric utility.[16] Finally, a comparison of the electric utility rates charged by Brigham City and cities with property tax bases most comparable to Brigham City's again indicates that Brigham City's rates are lower than the average of the rates charged by

---

12. *Chocolay Charter Township v. City of Marquette,* 138 Mich.App. 79, 358 N.W.2d 636, 638 (1984).

13. *See Hansen,* 729 P.2d at 192; *Inland Real Estate Corp. v. Village of Palatine,* 146 Ill.App.3d 92, 99 Ill.Dec. 906, 910, 496 N.E.2d 998, 1002 (1986); *see also* 12 McQuillin, § 35.37c, at 625.

14. The analysis was performed and prepared by a certified public accountant with extensive background in auditing, which includes experience in audits of municipalities and municipally owned utilities.

15. The following figures are taken from the analysis performed: at 400 kilowatt hours per month ("kwh"), Brigham City—$23.92, UP & L—$29.80; at 500 kwh, Brigham City—$29.90,

UP & L—$37; at 600 kwh, Brigham City—$35.88, UP & L—$44.20; at 700 kwh, Brigham City—$41.86, UP & L—$51.39; and at 800 kwh, Brigham City—$47.84, UP & L—$58.59.

16. This comparison considered all Utah Association of Municipal Power Systems ("UAMPS") and Utah Municipal Power Agency ("UMPA") members. The following figures are taken from the analysis performed: at 400 kwh, Brigham City—$23.92, the average electric bill of all cities considered ("cities' average")—$28.85; at 500 kwh, Brigham City—$29.90, cities' average—$34.93; at 600 kwh, Brigham City—$35.88, cities' average—$41.08; at 700 kwh, Brigham City—$41.86, cities' average—$47.04; and at 800 kwh, Brigham City—$47.84, cities' average—$53.

these cities.[17]

From these comparisons, it is apparent that Brigham City's rates are comparable to and in many instances lower than rates charged by other electric utility providers. We therefore conclude that the rates charged by Brigham City for electric utility service are reasonable.

■ Walker's final claim on appeal is that Brigham City's overcharging for electric utility service is unconstitutional. Specifically, Walker contends that because the charges are "excessive," they are a tax and therefore an unconstitutional taking of property without just compensation in violation of article I, section 22 of the Utah Constitution.[18] To obtain relief under article I, section 22, Walker must first demonstrate that he has "some protectible interest in property."[19] Walker has failed to do so.[20] The district court therefore did not err in concluding that Walker's claim does not rise to the level of constitutional magnitude.

We have duly considered Walker's remaining arguments and find them to be without merit. We therefore affirm the judgment of the district court.

DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

HOWE, Associate Chief Justice, concurring:

I concur. I agree that a city-owned electric utility may impose charges which produce a profit. The charges are unlike fees that are required for purposes such as those involved in *Call v. City of West Jordan*, 614 P.2d 1257 (Utah 1980) (park improvement fees); *Weber Basin Home Builders' Ass'n v. Roy City*, 26 Utah 2d 215, 487 P.2d 866 (1971) (building permit), and *Consolidated Coal Co. v. Emery County*, 702 P.2d 121 (Utah 1985) (business license). Fees for these purposes must be reasonably related to the cost of providing the service or regulating the licensee or permittee.

However, section 55-3-10 limits the profit of an electric utility to "a reasonable rate for the service rendered." The majority opinion has interpreted this limitation to require us to compare Brigham City's charges with those charged by other cities in Utah which own and operate an electric utility and by Utah Power and Light, an investor-owned utility. Another plausible interpretation would be that urged by Walker: that the return be reasonable in comparison with the cost of producing the power. He points out that Brigham City charges approximately double the cost of producing the power, reaping the City a handsome profit of between $1 million and

---

**17.** This comparison considered UAMPS and UMPA member cities with property tax bases most comparable to that of Brigham City. The following figures are taken from the analysis performed: at 400 kwh, Brigham City—$23.92, the average electric bill of all cities considered ("cities' average")—$28.81; at 500 kwh, Brigham City—$29.90, cities' average—$35.20; at 600 kwh, Brigham City—$35.88, cities' average—$41.58; at 700 kwh, Brigham City—$41.86, cities' average—$47.94; and at 800 kwh, Brigham City—$47.84, cities' average—$54.30.

**18.** Article I, section 22 provides, "Private property shall not be taken or damaged for public use without just compensation."

**19.** *Colman v. Utah State Land Bd.*, 795 P.2d 622, 625 (Utah 1990).

**20.** Walker's argument appears to be that rates which are "excessive" or not reasonably related to the services provided amount to a constitutional taking of property, implicitly suggesting that he has a protectible property interest in the rates being charged or, more specifically, in rates that are reasonable and do not exceed the costs of service. While several courts addressing claims alleging violation of procedural due process have recognized continued uninterrupted utility service as a protected property interest, *Public Serv. Co. of Colorado v. Public Utils. Comm'n*, 653 P.2d 1117, 1120–21 (Colo.1982); *Denver Welfare Rights Org. v. Public Utils. Comm'n*, 547 P.2d 239, 243 (Colo.1976); *Dedeke v. Rural Water Dist. No. 5*, 229 Kan. 242, 623 P.2d 1324, 1331 (1981); *Tucker v. Hinds County*, 558 So.2d 869, 873 (Miss.1990), none to our knowledge has acknowledged a property interest in the rate charged for utility service. *See Mississippi Power Co. v. Goudy*, 459 So.2d 257, 263 (Miss.1984) (plaintiff had "no property right in a fair and reasonable utility rate"); *see also Public Serv. Co.*, 653 P.2d at 1121 (plaintiffs did not have "a legitimate claim of entitlement" to utility service at a certain rate).

$1.5 million per year. Walker attacks these charges as being unreasonable. Inasmuch as cities have for years without legal challenge used their electric utility to produce excess revenue which is placed into the general fund, I am concurring with the majority's method of determining whether the rates are reasonable. However, I commend this issue to the legislature to examine and clarify its intent in this sensitive area of financing city operations.