**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 22 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

RURAL WATER DISTRICT NO. 1,
ELLSWORTH COUNTY, KANSAS,
commonly known as Post Rock Rural
Water District, also known as
Ellsworth County Rural Water District
No. 1,

      Plaintiff-Appellant and Cross-
      Appellee,

v.

CITY OF WILSON, KANSAS,

      Defendant-Appellee and Cross-
      Appellant.

Nos. 98-3337, 98-3340,
99-3075 & 99-3084

---

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. CV-96-1297-WEB)

---

Victor S. Nelson, of Victor S. Nelson, P.A., Wichita, Kansas, for the appellant.

Allen G. Glendenning, of Watkins, Calcara, Rondeau, Friedeman, Bleeker,
Glendenning & McVay, Chtd, Great Bend, Kansas, for the appellee.

---

Before **HENRY, BRISCOE**, Circuit Judges, and **ALLEY**, District Judge. [1]

---

[1] The Honorable Wayne E. Alley, United States District Judge for the
(continued...)

**HENRY**, Circuit Judge.

Plaintiff Rural Water District No. 1, Ellsworth County, Kansas (commonly known as Post Rock Rural Water District) brought this case alleging that defendant City of Wilson, Kansas, (the City) violated 7 U.S.C. § 1926(b) by providing domestic water service to customers in Post Rock's service area. Post Rock sought declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202. Post Rock appeals the district court's refusal to grant a permanent injunction preventing the City from providing domestic water service in Post Rock's service area. Post Rock also appeals the district court's refusal to award all of its attorney fees and expenses under 42 U.S.C. § 1988. The City cross-appeals the district court's decision to grant a contingent injunction concerning the City's provision of water service in the Purma Addition. The City further appeals the district court's award of partial attorney fees to Post Rock under § 1988. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm in part, reverse in part, and remand.

I.

The City is a municipal corporation in Ellsworth County, Kansas. Post

[1](...continued)
Western District of Oklahoma, sitting by designation.

Rock is a rural water district formed on March 5, 1979. Post Rock has the legal right pursuant to 7 U.S.C. § 1926(c) to provide water service "to all of Ellsworth County except the incorporated cities, including the City of Wilson as it existed on March 5, 1979." Aplt. App. I at 147. The City owns and operates groundwater wells, water treatment systems, and water distribution systems within the Wilson city limits and within areas annexed into the City since January 1995. Pursuant to § 1926(c), customers within Post Rock's service area must receive water service from Post Rock or provide their own water; they may not connect to the City water system unless Post Rock is unable to provide service or releases them from the water district.

To receive water service, Post Rock requires prospective customers to submit an application for a benefit unit, accompanied by an $800 application fee.[2] This purchase of a benefit unit makes the prospective customer a part owner of the district. With a portion of the application fee, Post Rock hires an independent engineering firm to determine whether the customer can be adequately served by Post Rock "without curtailing service to existing Post Rock customers. If the engineer finds that there is sufficient capacity to serve the potential user and determines what additions will be required to the system, Post

---

[2] Alternatively, the potential customer may pay for an engineering study without filing an application.

3

Rock then calculates the cost of adding the potential user to the system." Aplt. App. I at 151. Under this policy, the customer pays all of the costs of adding his property to Post Rock's water system.

This appeal concerns three properties in Post Rock's service area: the Purma Addition, the Prairie Estates Addition, and the Branda property. Purma Addition is located outside the 1979 Wilson city limits. On April 20, 1995, the City annexed Purma Addition. In December 1995, the City extended its municipal water system to Purma Addition and in July 1997, it began providing water service to the two duplexes in Purma Addition. Although Post Rock had the ability to deliver water to Purma Addition, Post Rock had no water pipes in Purma Addition at the time of trial. At the time of trial, no one in Purma Addition had made a formal application to Post Rock for water service. A Post Rock study showed it would take two to five days to establish service to the duplexes, at a cost of $32,000.

Prairie Estates Addition is also located outside the 1979 Wilson city limits. At the time of trial, the City had not annexed Prairie Estates, but had studied the feasibility of running water pipes into the area. At the time of trial, Post Rock had not received a formal application for water service from anyone in Prairie Estates. Post Rock had no water pipes in Prairie Estates, but there was testimony that it would take three to six days to provide water service. At the time of trial,

4

no houses had been built in Prairie Estates and none were planned in the immediate future. Post Rock could not state whether it would have the capacity to serve Prairie Estates in the future.

The Branda property was annexed into the City in 1992. Before January 19, 1995, the City provided water service only to a house on the property. After January 19, 1995, the City also provided service to another building on the property. At the time of trial, Post Rock had not received an application for water service and had not done a cost analysis of providing water service to the property.

On February 6, 1997, Post Rock filed an amended complaint in federal district court alleging the City violated 7 U.S.C. § 1926(b) by providing water service in Post Rock's service area and seeking declaratory and injunctive relief under 28 U.S.C. §§ 2201 and § 2202. In its trial brief, Post Rock asserted it was entitled to relief under 42 U.S.C. § 1983 and requested attorney fees pursuant to 42 U.S.C. § 1988.

After a bench trial, the district court entered judgment on October 27, 1998, concluding that Post Rock properly brought its claim for a violation of § 1926(b) under 42 U.S.C. § 1983. The district court determined that the City was encroaching on Post Rock's service area, but concluded that Post Rock was not making service available because it charged customers for building water system

5

infrastructure. The district court entered a contingent injunction as to Purma Addition, enjoining the City from providing water service if Post Rock agreed to provide service at a reasonable cost. The district court denied Post Rock relief as to Prairie Estates because Post Rock had not shown when, if ever, there would be domestic water users in that area and whether Post Rock would have the capacity to serve those users. The district court also denied Post Rock relief as to the Branda property because Post Rock had not shown it could serve the property and had not made service available. Post Rock filed a motion for attorney fees, expenses, and expert witness fees under § 1988. The district court concluded that Post Rock was a prevailing party under § 1988 and awarded Post Rock 25 percent of its claimed fees and expenses because it had prevailed on only a portion of its claim.

## II.

Post Rock appeals the district court's denial of injunctive relief, which we review for abuse of discretion. See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1230 (10th Cir. 1997). "The discretionary decision is 'not left to a Court's "inclination," but to its judgment; and its judgment is to be guided by sound legal principles.'" Id. (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 416 (1975)). "The court's discretion is to be exercised in light of the purposes of the statute on which plaintiff's suit is based." Id. To the

extent the district court determined questions of law in interpreting a statute, we exercise de novo review. Ute Indian Tribe v. Utah, 114 F.3d 1513, 1520 (10th Cir. 1997).

*Protection from competition under 7 U.S.C. § 1926(b)*

Post Rock is a rural water district incorporated by the Ellsworth County Board of County Commissioners to develop and provide water service to the rural residents within its territory, pursuant to Kan. Stat. Ann. § 82a-613 (1997). Kansas law authorizes rural water districts to borrow money from the federal government. Kan. Stat. Ann. § 82a-619(b) (1997). "As part of the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921-2009n, Congress authorized the Secretary of Agriculture to make or insure loans to nonprofit water service associations for 'the conservation, development, use, and control of water.'" Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow, 191 F.3d 1192, 1194 (10th Cir. 1999) (quoting 7 U.S.C. § 1926(a)), cert. denied, 120 S. Ct. 1532, 1548 (2000). In accordance with these provisions, Post Rock borrowed money from the Farmer's Home Administration (FmHA).[3]

Section 1926 applies to rural water districts receiving loans from the

---

[3]The FmHA is now known as the Rural Utilities Service, an agency of the United States Department of Agriculture. See 7 C.F.R. § 1780.3(a).

FmHA. That statute provides that "[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body." 7 U.S.C. § 1926(b). By enacting § 1926(b), Congress intended to protect rural water districts from competition to encourage rural water development and to provide greater security for and thereby increase the likelihood of repayment of FmHA loans. See Sequoyah County, 191 F.3d at 1196; Bell Arthur Water Corp. v. Greenville Utils. Comm'n, 173 F.3d 517, 523 (4th Cir. 1999). Section 1926(b) is broadly construed to protect rural water districts from competition with other water service providers. See Adams County Reg. Water Dist. v. Village of Manchester, Ohio, 226 F.3d 513, 518 (6th Cir. 2000) (stating that § 1926(b) "should be given a liberal interpretation that protects rural water associations indebted to the FmHA from municipal encroachment") (internal quotation marks omitted); Bell Arthur, 173 F.3d at 520, 526 (noting Congress intended by enactment of § 1926(b) to protect from competition the territory served by a rural water district); Lexington-South Elkhorn Water Dist. v. City of Wilmore, 93 F.3d 230, 235 (6th Cir. 1996) (noting that § 1926(b) is given a liberal interpretation to protect rural water districts); Jennings Water, Inc. v. City of North Vernon, 895 F.2d 311, 315 (7th Cir. 1989) (detailing the legislative history of § 1926(b)). "[S]ection 1926(b) 'indicates a

8

congressional mandate that local governments not encroach upon the services provided by [federally indebted water] associations, be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means.'" Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist., 861 F.2d 1211, 1214 (10th Cir. 1988) (quoting City of Madison v. Bear Creek Water Ass'n, 816 F.2d 1057, 1059 (5th Cir. 1987)).

The City does not dispute that it provided water service in Post Rock's service area, but argues that § 1926(b) does not apply in this case. "[T]o receive the protection against competition provided by § 1926(b) a water association must (1) have a continuing indebtedness to the FmHA and (2) have provided or made available service to the disputed area." Sequoyah County, 191 F.3d at 1197. The parties stipulated that Post Rock was indebted to the FmHA. The parties also stipulated that Purma Addition, Prairie Estates Addition, and the Branda property were located in Post Rock's service area. Accordingly, the narrow issue remaining is whether Post Rock made service available to those areas.

*Consideration of cost*

The district court determined that the City was encroaching on Post Rock's service area, but concluded that Post Rock failed to make water service available

9

because of its requirement that the customer pay all costs necessary to establish water service, including the extension of infrastructure. Post Rock contends the reasonableness of the cost to be borne by a prospective customer is not a relevant inquiry in determining whether Post Rock made water service available for purposes of § 1926(b).

Although the district court determined that Post Rock could physically provide service to Purma Addition, it concluded that "conditioning service on the user's agreement to pay unreasonable fees is not 'making service available.'" Aplt. App. I at 160. Post Rock does not dispute that it requires customers to pay the entire cost of establishing water service. Post Rock does not pay for any water line extensions necessary to establish new water service. In the case of Purma Addition, Post Rock's engineer estimated it would cost $32,000 to connect water service to the duplexes, which would be paid by the customers. This estimated cost would be for construction of a service line to the duplexes, not a main line. Although the duplex owners would pay the cost, Post Rock would be able to use the line to serve future users. If Post Rock needed to make improvements to its system to serve a new customer, such as installing a pumping station, the prospective customer would pay for that improvement. However, Post Rock indicates that even if it joined additional users, it would not pro rate so as to reimburse some of the $32,000.00 cost to the initial two duplex owners .

10

In order to determine whether a water association has made service available, the focus is "primarily on whether the water association has in fact 'made service available,' i.e., on whether the association has proximate and adequate 'pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time." Sequoyah County, 191 F.3d at 1203 (emphasis added). "[A] water association meets the 'pipes-in-the-ground' test by demonstrating 'that it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made.'" Id. (quoting Bell Arthur, 173 F.3d at 526). "This is essentially an inquiry into whether a water association has the capacity to provide water service to a given customer." Id.

Nevertheless, in spite of this focus on pipes-in-the-ground, we do not agree with Post Rock that the costs of water service are completely irrelevant in determining whether it has made services available under § 1926(b). As the district court observed, Congress intended § 1926(b) not only to safeguard the viability of rural water associations but also to encourage rural water development by expanding the number of potential users, resulting in lower costs per user. See Scioto County Reg'l Water Dist. No. 1 v. Scioto Water, Inc., 103 F.3d 38, 40 (6th Cir. 1996) (citing the Fifth Circuit's explanation of the dual purposes of § 1926(b)—to "'[s]afeguard the viability and financial security of

11

such associations'" and to "'encourage water development by expanding the number of potential users'") (quoting City of Madison, Miss. v. Bear Creek Water Ass'n, 816 F.2d 1057, 1060 (5th Cir. 1987)).

The legislative history of the statute reflects this concern with costs. See Sen. Rep. No. 566 (1961), reprinted in 1961 U.S.C.C.A.N. 2243, 2309 (stating that, "[b]y including service to other rural residents, the cost per user is reduced and the loans are more secure in addition to the community benefits of a safe and adequate supply of running household water" and that "[t]he committee understands that there are areas where several rural settlements can more economically combine their efforts to establish an adequate water source by developing a common reservoir and pipeline at a cost to the users considerably below the cost attendant to independent facilities serving each community") (emphasis added).

Moreover, the phrase used by Congress in the statute—"service . . . made available" does not exclude consideration of costs. The word "available" means "capable of being employed with advantage of or turned to account, hence capable of being made use of, at one's disposal, within one's reach." 1 Oxford English Dictionary at 812 (2d ed. 1989). Thus, with regard to a statute enacted in part to reduce the cost per user, we cannot agree that providing services at a grossly excessive cost renders them "available." Cf. Metz v. Tusico, Inc., 167 F.

12

Supp. 393, 397 (E.D. Va. 1958) (construing the statement in a contract that "water is available to the property" as indicating that water was "obtainable at a reasonable cost ") (emphasis added).

Accordingly, we conclude that even though a rural water district has "adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made,'" Sequoyah County , 191 F.3d at 1201 (quoting Bell Arthur , 173 F.3d at 526), the cost of those services may be so excessive that it has not made those services "available" under § 1926(b). Although the costs of services need not be competitive with the costs of services provided by other entities, the protection granted to rural water districts by § 1926(b) should not be construed so broadly as to authorize the imposition of any level of costs. There is some point at which costs become so high that assessing them upon the user constitutes a practical deprivation of service. Just as there are limits on how long a period of time a water district may take to provide service (i.e. a "reasonable amount of time"), so there are limits on how much it can charge for that service and still be considered to have "made [it] available."

In articulating a standard for determining whether the costs of a water district's services are excessive, the decisions of Kansas courts provide guidance. Those courts have concluded that water rates may not be "unreasonable,

13

excessive, and confiscatory." Bodine v. Osage County Rural Water District No. 7, 949 P.2d 1104, 1110 (Kan. 1997); see Shawnee Hills Mobile Homes, Inc. v. Rural Water Dist. No. 6, 537 P.2d 210, 217 (Kan. 1975). In an unpublished decision (which is not precedential but which we find persuasive, see 10th Cir.R. 36.3), this circuit has taken a somewhat similar approach. See Pittsburg County Rural Water Dist. No. 7 v. City of McAlester, No. 98-7148, 2000 WL 525942, at **4 n.7 (10th Cir. May 2, 2000) (concluding that a water district's practice of requiring customers to pay for facility improvements was not "per se unreasonable" but did raise questions in need of "further factual development"). We therefore conclude that, if the city can show that Post Rock's rates or assessments were unreasonable, excessive, and confiscatory, then the water district has not made services available under § 1926(b).

The Kansas decisions indicate that several factors are relevant in making this determination: (1) whether the challenged practice allows the district to yield more than a fair profit; (2) whether the practice establishes a rate that is disproportionate to the services rendered; (3) whether other, similarly situated districts do not follow the practice; (4) whether the practice establishes an arbitrary classification between various users. See Shawnee Hills, 537 P.2d at 218-21. No one factor is dispositive, and the determination of whether the practice is excessive, unreasonable, and confiscatory depends on an assessment of

14

the totality of the circumstances. See id. Applying this standard, we examine each property individually in order to determine whether Post Rock has made service available under § 1926(b).

*Purma Addition.* The district court concluded as a matter of law that requiring the owners of the Purma Addition duplex to pay the $32,000 for constructing a water line was unreasonable. As a result, the court concluded, Post Rock had not made service available under § 1926(b). The district court did not cite any evidence from the record and it did not provide any explanation for its conclusion. There is no indication that the court considered the factors outlined by the Kansas courts.

Accordingly, we conclude that the case should be remanded to the district court for further consideration of Post Rock's imposition of the $32,000 fee. On remand the City should be afforded an opportunity to show that Post Rock's practice was excessive, unreasonable, and confiscatory. If the City makes such a showing, then the court should conclude that the water district has not "provided or made [service] available." See 7 U.S.C. § 1926(b). Absent such a showing by the City, the water district will be entitled to relief under § 1926(b).

*Prairie Estates Addition.* The district court denied Post Rock any relief for Prairie Estates. The district court concluded that Post Rock failed to establish

15

when, if ever, there would be water users in Prairie Estates and whether Post Rock would have the capacity to serve those users. At the time of trial, there was no development in Prairie Estates and none was planned in the near future. The district court properly concluded that an injunction concerning Prairie Estates would be premature. Although the City planned to run water pipes into Prairie Estates for fire protection, this was a permissible action that did not encroach on Post Rock's service rights. See Rural Water Dist. No. 3 v. Owasso Utils. Auth., 530 F. Supp. 818, 823 (N.D. Okla. 1979) (noting "[t]here is nothing in the Act [§ 1926] itself to preclude the Owasso Utilities Authority from maintaining a water line for the purposes of fire protection only"); Kan. Stat. Ann. § 80-1513(c) (1997) (requiring city to provide fire protection services to annexed territory). Post Rock failed to show it had the ability to provide service to Prairie Estates and that the City encroached on its service area.

*Branda property.* The district court denied Post Rock's request for injunctive relief as to the Branda property. The district court determined that Post Rock failed to show it could serve the Branda property, had made no effort to extend service to the property, and had not commissioned an engineering study to determine if service was feasible. Based on these findings, the district court concluded that Post Rock had not made service available to the Branda property. On appeal, Post Rock does not dispute these findings and conclusions. The

16

district court did not err in denying Post Rock relief as regards the Branda property.

*Denial of declaratory judgment*

The district court denied Post Rock's request for a declaratory judgment that § 1926(b) applied to all property surrounding the City as long as Post Rock was indebted to the FmHA and had the capacity to serve additional water users. This court reviews the denial of declaratory relief for abuse of discretion. Johnson v. Thompson, 971 F.2d 1487, 1498 (10th Cir. 1992). In denying injunctive relief for Prairie Estates, the district court noted that its "legal ruling will apply equally to the Prairie Estates addition should that area ever be developed." Aplt. App. I at 161. Whether Post Rock is entitled to provide exclusive water service in Prairie Estates will depend on whether it has the ability to serve the area; this has not yet been established and cannot be established until there are water customers in the area. The district court did not abuse its discretion in denying Post Rock declaratory relief.

*Award of attorney fees, expenses, and costs*

The district court awarded Post Rock partial attorney fees under 42 U.S.C. § 1988. The City appeals the award of attorney fees, arguing that Post Rock's claim for an injunction under § 7 U.S.C. § 1926(b) is not cognizable under 42

17

U.S.C. § 1983 and therefore does not support an award of attorneys' fees under 42 U.S.C. § 1988. [4]

As noted above, the record requires further factual development as to whether Post Rock's imposition of costs on the owners of the Purma Addition duplex was "unreasonable, excessive, and confiscatory" such that it did not make services available under § 1926(b). Accordingly, it is unclear at this point whether Post Rock will prevail on its claim for injunctive relief as to the Purma Addition and whether, as a result, it will request an award of attorneys fees as the prevailing party under 42 U.S.C. § 1988.

However, in the event that Post Rock does prevail on this claim, the district court will be required to resolve the question of whether Post Rock is entitled to attorneys fees. Because the issue has been fully briefed, we will address it here. Although we generally review an award of attorney fees for abuse of discretion, we consider de novo the district court's legal conclusions underlying the award of fees. Brandau v. Kansas, 168 F.3d 1179, 1181 (10th Cir.), cert. denied, 526 U.S. 1132 (1999).

Section 1988(b) allows for an award of attorney fees in an action to enforce 42 U.S.C. § 1983. The district court concluded that actions for

_____

[4] Post Rock has filed a cross-appeal of the amount of the award. However, in light of our decision to remand Post Rock's claim as to the Purma Addition to the district court for further proceedings, that cross-appeal is moot.

18

violations of § 1926(b) are properly brought under § 1983. Although Post Rock's complaint did not mention § 1983, Post Rock may recover attorney fees under § 1988 if its complaint contained allegations sufficient to support a § 1983 action. See Haley v. Pataki, 106 F.3d 478, 481 (2d Cir. 1997); Thorstenn v. Barnard, 883 F.2d 217, 218 (3d Cir. 1989).

The issue is whether Post Rock's complaint stated a claim that would be cognizable under § 1983. Section 1983 provides that

> [e]very person who, under color of any statute, [or] ordinance . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The City contends that Post Rock, as a quasi-municipality,[5] cannot bring a § 1983 claim against the City, a municipality. The City also asserts that Post Rock is not a "citizen" or "other person" under § 1983.

A political subdivision of a state may not bring certain constitutional challenges against another political subdivision. See Branson Sch. Dist. RE-82

---

[5] The Kansas Supreme Court has concluded that a rural water district is "incorporated as a quasi-municipal corporation by declaration of the board of the commissioners of the county in which the water district is located." Dedeke v. Rural Water Dist. No. 5, 623 P.2d 1324, 1331 (Kan. 1981) (citing Kan. Stat. Ann. 82a-616). The powers of a rural water district are prescribed by statute, the water district enjoys the power of eminent domain, and "[i]n law and in fact, a rural water district exercises the powers of a public utility," "subject to state regulation and control." Id.

19

v. Romer , 161 F.3d 619, 628 (10th Cir. 1998) (noting that "a municipality may not bring a constitutional challenge against its creating state when the constitutional provision that supplies the basis for the complaint was written to protect individual rights, as opposed to collective or structural rights"); Housing Auth. v. City of Ponca City , 952 F.2d 1183, 1190 (10th Cir. 1991) (noting that "a political subdivision of a state may not challenge the validity of an act by a fellow political subdivision under the Fourteenth Amendment unless such an action is expressly authorized by the creating state"); United States v. Alabama , 791 F.2d 1450, 1454-55 (11th Cir. 1986) (noting that generally "creatures of the state have no standing to invoke certain constitutional provisions in opposition to the will of their creator"); South Macomb Disposal Auth. v. Township of Washington , 790 F.2d 500, 505 (6th Cir. 1986) (noting that "a political subdivision of a state cannot challenge the constitutionality of another political subdivision's ordinance on due process and equal protection grounds").

This court in Ponca City reasoned that because "political subdivisions are creatures of the state, they possess no rights independent of those expressly provided to them by the state. Hence, unless expressly granted the ability by its creating state, a political subdivision cannot assert federal constitutional rights in opposition to state action." 952 F.2d at 1192. The reasoning of Ponca City is inapplicable here. Post Rock is asserting a violation of federal statutory law, not

20

a constitutional violation. The State of Kansas has authorized Post Rock to borrow money from the FmHA, which brings Post Rock under the rubric of § 1926.

We next address whether Post Rock, a quasi-municipality, may bring a § 1983 action against the City for its alleged violation of § 1926. The Supreme Court has held that municipalities are "persons" for purposes of being sued under § 1983. Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689-90 (1978). Other circuits have stated, post-Monell, that while a municipality may be sued under § 1983, it may not bring an action under the same provision. See Rockford Bd. of Educ., Sch. Dist. No. 205 v. Illinois State Bd. of Educ., 150 F.3d 686, 688 (7th Cir. 1998) (noting that "a city or other municipality cannot bring a suit under 42 U.S.C. § 1983"); Randolph County v. Alabama Power Co., 798 F.2d 425, 425-26 (11th Cir. 1986) (stating that "we have subsequent to Monell continued to hold that a municipality has no cause of action under section 1983"). A review of those cases, however, shows they involved claims by municipalities of constitutional violations, which generally cannot be asserted by municipalities under any statute. See City of East St. Louis v. Circuit Court for Twentieth Judicial Circuit, 986 F.2d 1142, 1144 (7th Cir. 1993) (stating that "[m]unicipalities cannot challenge state action on federal constitutional grounds

21

because they are not 'persons' [and] . . . cannot invoke the protection of the Fifth or Fourteenth Amendments"); Appling County v. Municipal Elec. Auth., 621 F.2d 1301, 1308 (5th Cir. 1980) (stating that "[t]he Monell decision does not call into question the principle that a city or county cannot challenge a state statute on federal Constitutional grounds"). In this case, Post Rock is claiming a statutory violation. Section 1983 provides a private cause of action for violations of federal statutes, as well as for constitutional violations. Maine v. Thiboutot, 448 U.S. 1, 4 (1980). This court has held that "a political subdivision [may] sue its parent state when the suit alleges a violation by the state of some controlling federal law." Branson, 161 F.3d at 630. It follows that Post Rock can sue the City under § 1983 for violations of § 1926.

In Monell, the Supreme Court relied on legislative history to conclude that a municipality may be sued under § 1983. The Court explained that before the Civil Rights Act was passed Congress had stated that "'in all acts hereafter passed . . . the word "person" may extend and be applied to bodies politic and corporate . . . unless the context shows that such words were intended to be used in a more limited sense.'" Monell, 436 U.S. at 688 (quoting Act of Feb. 25, 1871, § 2, 16 Stat. 431). We agree with the Sixth Circuit that "in light of Monell, it would be a strained analysis to hold, as a matter of statutory construction, that a municipal corporation was a 'person' within one clause of

22

section 1983, but not a 'person' within another clause of that same statute."
South Macomb, 790 F.2d at 503. Post Rock is not precluded from bringing an action under § 1983 simply by its status as a quasi-municipality.

*Availability of § 1983 for violation of § 1926(b)*

While Post Rock is not precluded as a quasi-municipality from bringing a § 1983 action for violation of a federal statute, we must next determine whether a violation of § 1926(b) gives rise to a federal right enforceable through a § 1983 action. Section 1983 protects certain rights conferred by federal statutes. Blessing v. Freestone, 520 U.S. 329, 340 (1997). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law." Id. The court looks at three factors to determine whether a particular statutory provision gives rise to a federal right: (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) "the statute must unambiguously impose a binding obligation on the States." Id. at 340-41.

All of these factors support the conclusion that § 1926(b) gives rise to a federal right. Section 1926(b) serves to prohibit competition with rural water districts; this indicates that Congress intended the provision to benefit rural water

23

districts such as Post Rock. See Bell Arthur , 173 F.3d at 520 (stating § 1926(b) was enacted to protect nonprofit water service associations and hence, the federal loans made to them, by "protecting the territory served by such an association facility against competitive facilities"); but see Wayne , 36 F.3d at 529 (stating that "[t]he overwhelming weight of authority is that the purpose of the statute is to protect rural water service users access to clean, safe water"). This right against competition and the requirements for protection of the right are defined by the statute and are not so vague and amorphous that its enforcement would strain judicial competence. The statute unambiguously imposes a binding obligation on municipal corporations, which are political subdivisions of the state, to not compete with rural water districts.

Even though § 1926(b) creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983. Blessing , 520 U.S. at 341. A right is not enforceable under § 1983 if Congress "'specifically foreclosed a remedy under § 1983.'" Id. (quoting Smith v. Robinson , 468 U.S. 992, 1005, n.9 (1984)). Congress may expressly preclude such a remedy by forbidding recourse to § 1983 in the statute itself. Id. Congress can also impliedly preclude a § 1983 remedy by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. Id.

With these principles in mind, we conclude that Congress has not

foreclosed a § 1983 remedy for violations of § 1926(b).  Section 1926(b) does not itself forbid recourse to § 1983.  Moreover, "Congress provided no enforcement mechanism for protecting the right that § 1926(b) creates.  Thus, pursuant to § 1983, § 1926(b) gives rise to a private right of action on the part of rural water service users."    Wayne , 36 F.3d at 529;   see North Alamo Water Supply Corp. v. City of San Juan    , 90 F.3d 910, 917 (5th Cir. 1996) (noting that "[s]ection 1926(b) does not create or specify a remedy for the enforcement of violations, but an injunction has been the principal tool employed by the courts with which to enforce the statute and prevent violations").  As a result, the district court did not err in concluding that Post Rock properly brought its action for violation of § 1926(b) under §1983.  In the event that Post Rock prevails on remand on its claim for injunctive relief as to the Purma Addition, it will be entitled to an award of a reasonable amount attorneys fees under 42 U.S.C. § 1988.

III.

The judgment of the district court as to the Purma Addition is VACATED and the case is REMANDED for the district court for further proceedings.  The judgment of the district court as to the Prairie Estates Addition and the Branda property is AFFIRMED.

Nos. 98-3337, 98-3340, 99-3075, 99-3084
Rural Water Dist. No. 1 v. City of Wilson

**BRISCOE** , Circuit Judge, concurring and dissenting:

I concur in the majority opinion except for its holding regarding the Purma Addition that cost to the customer of establishing water service is relevant in determining whether Post Rock has made services available under § 1926(b). Rather than reverse and remand for further consideration of whether Post Rock's imposition of a $32,000 cost upon the owners of the Purma Addition duplex was excessive, unreasonable, and confiscatory, I would reverse and remand with directions to the district court to enjoin the City from providing water service in the Purma Addition and to reassess the amount of attorney fees awarded to Post Rock as a prevailing party under 42 U.S.C. § 1988.

The proper test in determining whether Post Rock made service available under § 1926(b) is the "pipes in the ground" test enunciated in <u>Sequoyah County Rural Water District No. 7 v. Town of Muldrow</u> , 191 F.3d 1192 (10th Cir. 1999), <u>cert. denied</u> , 120 S. Ct. 1521 (2000), i.e., whether Post Rock had "adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service [was] made." <u>Id.</u> at 1203.

> This court has held that to receive the protection against competition provided by § 1926(b) a water association must (1) have a continuing indebtedness to the FmHA and (2) have provided or made available service to the disputed area. [Citation omitted.] The purpose of the second inquiry is to determine whether the disputed customers are within the water association's service area . . . . Doubts about whether a water association is entitled to protection

from competition under § 1926(b) should be resolved in favor of the FmHA-indebted party seeking protection for its territory. See North Alamo Water Supply Corp. v. City of San Juan, Tex., 90 F.3d 910, 913 (5th Cir. 1996) ("The service area of a federally indebted water association is sacrosanct. Every federal court to have interpreted § 1926(b) has concluded that the statute should be liberally interpreted to protect FmHA-indebted rural water associations from municipal encroachments.").

Id. at 1197. The cost of water service provided by Post Rock should not be compared to the cost of water service provided by the City because this would impermissibly create competition with the rural water district. See S. Rep. No. 566, 87th Cong., 1st Sess., reprinted in 1961 U.S.C.C.A.N. 2243, 2309 (noting that § 1926(b) exists to "protect[] the territory served by such an association against competitive facilities"). Similarly, the cost to the customer of establishing service cannot be considered in determining whether the rural water district has made service available for purposes of protecting it against encroachment by a city water district under § 1926(b).

This conclusion does not leave rural water customers without a remedy. Cost might be a relevant factor in an action against Post Rock by rural water customers under state law. Kansas statutes provide for release of lands from the water district's service area "[i]f it becomes apparent that certain lands included within a district cannot be economically or adequately served by the facilities of the district." Kan. Stat. Ann. § 82a-630 (1997). Rural water customers can also bring an action in state court challenging the reasonableness of rates set by rural

2

water districts. As the Kansas Supreme Court has noted, the rural water district "is not free to exact whatever rate it sees fit to impose" and "rates must be reasonable in the sense that they are not excessive or confiscatory." Shawnee Hills Mobile Homes, Inc. v. Rural Water Dist. No. 6, 537 P.2d 210, 216-17 (Kan. 1975); see Bodine v. Osage County Rural Water Dist. #7, 949 P.2d 1104, 1110 (Kan. 1997) (noting that "a water user who is subject to the rates [between a City and the rural water district] may still challenge the rates as improper if the litigant can overcome the rates' presumption of validity and prove that the rates are unreasonable, excessive, and confiscatory"). However, this cost inquiry is not relevant in determining whether the City violated § 1926(b).

The district court concluded Post Rock was a prevailing party under 42 U.S.C. § 1988 and awarded partial attorney fees on its limited success. As I would conclude the district court erred in ruling against Post Rock concerning the Purma Addition, I would also remand for the district court to reassess the extent to which Post Rock prevailed and the amount of attorney fees warranted.

I would reverse the district court's judgment as to the Purma Addition and remand to the district court with directions to enjoin the City from providing water service in that area and to reassess the extent to which Post Rock prevailed and award reasonable attorney fees accordingly.

3